UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -v-

CRAIG DUNN a/k/a "Kevin Brooks" a/k/a "Craig C. Dunn" a/k/a "Craig Johnson"; DARNELL L. CARTER; EULARIA KELLY,

                      Defendants.

Case No. 05-CR-127 (KMK)

OPINION AND ORDER

APPEARANCES:

Jillian B. Berman, Esq.
Assistant United States Attorney
U.S. Attorney's Office, S.D.N.Y.
New York, N.Y.
*Counsel for the Government*

Louis R. Aidala, Esq.
New York, N.Y.
*Counsel for Defendant Eularia Kelly*

KENNETH M. KARAS, District Judge:

    Defendant Eularia Kelly is charged with kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1), 1202, and conspiring to commit a kidnapping, in violation of 18 U.S.C. § 371.[1]

Kelly now brings this motion for an order, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii)[2] and Fed.

---

[1] Craig Dunn a/k/a "Kevin Brooks" a/k/a "Craig C. Dunn" a/k/a "Craig Johnson" and Darnell L. Carter are Co-Defendants in this case. However, the motion discussed herein is brought only on behalf of Defendant Kelly. Accordingly, the Court only discusses the factual background of the case with respect to Kelly.

[2] Kelly's motion papers erroneously refer to Fed. R. Crim. P. 6(e)(3)(C)(ii). As the Government points out, Rule 6(e) was restructured so that Rule 6(e)(3)(C)(ii) is now found at Rule 6(e)(3)(E)(ii).

R. Crim. P. 12(b)(2), authorizing disclosure of the grand jury minutes to the Court for inspection and dismissing the Indictment. For the reasons outlined below and stated on the record at the May 5, 2005 conference, the motion is DENIED. In addition, the oral application, made at the May 5, 2005 conference, to compel the Government to present certain evidence before the grand jury is DENIED.

## I. Background

Kelly was arrested, along with Co-Defendants Craig Dunn and Darnell Carter, on January 18, 2005. All three Defendants were indicted on February 1, 2005.[3] The facts as alleged in the

---

Rule 6(e)(3)(E)(ii) provides: "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

[3] Count One of the Indictment charges Kelly, Dunn and Carter with conspiring to commit a kidnapping, in violation of 18 U.S.C. § 371. Section 371 provides, in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Count Two of the Indictment charges Kelly, Dunn and Carter with kidnapping and aiding and abetting in a kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1), 1202.

Section 1201 provides, in pertinent part:

> (a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—
>
> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary if the person was alive when the transportation began;

2

Amended Complaint are as follows.[4] On January 17, 2005, an individual (hereinafter referred to as the "victim") left the apartment of his acquaintance in order to engage in a drug transaction with Dunn, a regular customer. (Amend. Compl. ¶ 2(a)) The victim was subsequently abducted by Dunn, Carter, an unknown man, and an unknown woman, from the vicinity of 177th Street and Broadway, in Manhattan. (Amend. Compl. p. 2 & ¶ 11(a)) The victim was restrained inside a car, beaten with a pistol, and stabbed with a knife. (Amend. Compl. ¶ 11(a)) The victim was then

> . . . .
>
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.
>
> . . . .
>
> Section 1202 provides, in pertinent part:
>
> (a) Whoever receives, possesses, or disposes of any money or other property, or any portion thereof, which has at any time been delivered as ransom or reward in connection with a violation of section 1201 of this title, knowing the same to be money or property which has been at any time delivered as such ransom or reward, shall be fined under this title or imprisoned not more than ten years, or both.
>
> (b) A person who transports, transmits, or transfers in interstate or foreign commerce any proceeds of a kidnapping punishable under State law by imprisonment for more than 1 year, or receives, possesses, conceals, or disposes of any such proceeds after they have crossed a State or United States boundary, knowing the proceeds to have been unlawfully obtained, shall be imprisoned not more than 10 years, fined under this title, or both.
>
> . . . .
>
> Dunn and Carter, but not Kelly, are also charged with possessing and brandishing a firearm during the course of the offense in violation of 18 U.S.C. § 924(c).

[4] The Complaint in this case was filed on January 19, 2005. An Amended Complaint was filed on January 20, 2005.

transported to a Travelodge motel in New Jersey, where he was kept inside a motel room handcuffed. (Amend. Compl. ¶ 11(b)) The victim observed Kelly while being held at the Travelodge. (Amend. Compl. ¶ 11(b)) During the course of these events, a number of ransom calls were placed. (Amend. Compl. ¶¶ 2(b),(c), 11(b))

The victim was then brought back to the car and kept restrained inside the car while Kelly drove. (Amend. Compl. ¶ 11(c)) Law enforcement officers subsequently pulled over the car on the Garden State Parkway, in New Jersey (Amend. Compl. ¶ 8), and found the victim inside the car bound and handcuffed with a hood over his head (Amend. Compl. ¶ 9). The victim was bleeding, and had sustained a blunt force trauma to his head and a stab wound. (Amend. Compl. ¶ 9)

On April 8, 2005, Kelly moved to have the Court inspect the grand jury minutes and dismiss the Indictment. The Government responded to the motion, by way of letter brief, on April 25, 2005. At a conference held on May 5, 2005, following argument, the Court denied the motion for the reasons stated on the record. In addition, the Court denied Kelly's oral application to compel the Government to present certain evidence before the grand jury. The Court indicated, however, that it would follow up with a written opinion. (Tr. 26)[5] Accordingly, this opinion supplements and reaffirms the May 5, 2005 rulings.

## II. Discussion

A. *In Camera* Inspection of Grand Jury Proceedings

"The secrecy of grand jury proceedings is fundamental to our criminal justice system." *United States v. Carter*, No. 04 CR. 594, 2005 WL 180914, at *5 (S.D.N.Y. Jan. 25, 2005) (citing

---

[5] "Tr." refers to the transcript of the hearing on May 5, 2005.

4

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). "Therefore, a party seeking disclosure of grand jury minutes must 'show a "particularized need" that outweighs the need for secrecy.'" *Carter*, 2005 WL 180914, at *5 (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 442-43 (1983) ("Neither the text of [Rule 6(e)(3)(C)(i)] nor the accompanying commentary describes any substantive standard governing issuance of such orders. We have consistently construed the Rule, however, to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted."); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("The burden . . . is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy."). Accordingly, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (citing *United States v. Wilson*, 565 F. Supp. 1416, 1436-37 (S.D.N.Y. 1983)); *see also Carter*, 2005 WL 180914, at *5 (citing *Moten*, 582 F.2d at 662). This standard applies both to *in camera* review and disclosure to the parties of grand jury minutes. *See Carter*, 2005 WL 180914, at *5; *United States v. Sullivan*, No. S102 CR. 1144, 2004 WL 253316, at *7 (S.D.N.Y. Feb. 10, 2004).

Moreover, "[g]enerally, a facially valid indictment returned by a duly constituted grand jury suffices to call for a trial on the merits of the charges set forth therein." *United States v. Bodmer*, 342 F. Supp. 2d 176, 179 (S.D.N.Y. 2004) (citing *Costello v. United States*, 350 U.S. 359, 363 (1956)). Thus, for example, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974) (citing cases); *see also United States v.*

5

*Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989) (rejecting argument that indictment should be dismissed based on allegations that the government had acted improperly in proceedings before grand jury, and explaining that "[a]n indictment, if valid on its face, may not be challenged on the ground that it is based on inadequate evidence"); *United States v. Butler*, 351 F. Supp. 2d 121, 126 (S.D.N.Y. 2004) ("[I]t is hornbook law that a federal defendant may not challenge a facially-valid indictment (and [defendant] makes no argument that the indictment here suffers from any facial defect) on the ground that it is based on insufficient evidence.") (citing *United States v. Williams*, 504 U.S. 36, 54-55 (1992)) As the Supreme Court has repeatedly held, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citing cases); *see also United States v. Santeramo*, 45 F.3d 622, 624 (2d Cir. 1995).

Kelly essentially advances two arguments, outlined in the written submissions and at argument, in support of the motion for inspection of the grand jury minutes. First, Kelly emphasizes the importance of an indictment, and accordingly the significance of remedying any defect in an indictment. (Tr. 9-11) At argument, counsel for Kelly maintained that, generally speaking, "[a]n indictment is of huge magnitude . . . [and] [i]t has such an effect that the charges brought against someone during the pendency of the indictment ha[ve] enormous effect." (Tr. 10) Counsel argued that "the effect on Ms. Kelly is a good example." (Tr. 10) In particular, counsel expressed concern about Kelly's inability to obtain bail. (Tr. 10-11) As noted at argument, the Court takes seriously the situation of a defendant who is detained pending the resolution of his or

her case. However, an indictment and detention do not alone establish "particularized need" justifying disclosure of grand jury minutes. Rather, such a rule would permit courts in virtually every case where a defendant is detained to look beyond a facially valid indictment, and thus intrude upon the functions of the grand jury. As the Supreme Court has stated, "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such 'supervisory' judicial authority exists . . . ." *Williams*, 504 U.S. at 47.

Second, Kelly argues that the weakness of the Government's evidence is suggestive of some failure to properly inform the grand jury of the law that would govern this case. The crux of Kelly's argument appears to be that the prosecutor should have, but appears not to have, by virtue of the fact that an indictment was returned, "charge[d] the grand jury that mere presence . . . [and] mere knowledge [are] not sufficient." (Tr. 19) This argument is not persuasive. To begin, as noted above, a facially valid indictment is not subject to a challenge that the grand jury acted on inadequate or incompetent evidence. *Calandra*, 414 U.S. at 345. Here, the Indictment tracks the language of the statutory provisions, and provides the approximate time and place, of the charged offenses. Moreover, the Indictment outlines two overt acts by Kelly: (1) Kelly joined Dunn and Carter at the motel room in New Jersey; and (2) Kelly drove the car on the Garden State Parkway. (Indictment ¶¶ 3(e), (f)) Thus, the Indictment satisfies the requirements that it "first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which [s]he must defend, and, second, enable[] [her] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. Defendant Kelly "makes no argument that the indictment here suffers from any facial defect." *Butler*, 351 F. Supp. 2d at 126.

7

In addition, as the Court pointed out at the conference, Kelly's argument regarding the allegedly deficient proof is flawed because it assumes that defense counsel is aware of all evidence presented to the grand jury, and relies merely on defense counsel's view that nobody could find probable cause based on the facts laid out in the Indictment. (Tr. 25) In other words, Kelly's argument is essentially that there must have been some improper conduct before the grand jury because, based on the evidence known to Kelly's counsel, the grand jury could not have properly indicted Kelly. This is faulty logic—rather than making the required showing of particularized need, Kelly's counsel requests the Court draw an inference that there is particularized need based on his view that an indictment could not have been properly issued in this case. Such reasoning undermines the requirement of "particularized need," permitting inspection in virtual every case based on a general suspicion that something improper has occurred before the grand jury. Moreover, as the Court noted on the record, while certainly not dispositive, it is informative that a magistrate judge signed the Amended Complaint that has facts along the lines of what defense counsel speculates the grand jury relied on in this case. (Tr. 26)

Thus, Kelly has failed to meet her burden of establishing particularized need. This is not a case where a defendant provides some specific allegation that "the Government engaged in prosecutorial misconduct or any other impropriety before the grand jury." *Sullivan*, 2004 WL 253316, at *8. Rather, Kelly advances only general allegations regarding the severity of the indictment, and speculates that the Government sought her indictment solely as a means of securing her cooperation. (Affirmation in Support of Def.'s Mot. for Inspection at 4-5; Tr. 17-18) These general and unsubstantiated assertions are insufficient to meet the "stringent standard . . . that [a] party must show 'a particularized need' for such materials." *Chacko v. United States*, No.

8

96 CR. 519, 04 Civ. 2258, 2005 WL 1388723, at *7 (S.D.N.Y. June 8, 2005). "[A] defendant's mere speculation as to what occurred in front of the grand jury does not warrant inspection of the minutes, either by disclosure to defense counsel or through *in camera* inspection by the Court." *United States v. Brown*, No. 95 CR. 168, 1995 WL 387698, at *7 (S.D.N.Y. June 30, 1996) (internal citations omitted); *see also United States v. Trochelmann*, No. 98 CR. 1276, 1999 WL 294992 (S.D.N.Y. May 11, 1999) ("Allegations based on belief, such as Defendants' allegations here, provide no reason to disregard the presumption of regularity of grand jury proceedings, and do not even warrant an in camera review of the grand jury minutes.") (quotations omitted). Accordingly, the motion for the Court to inspect the grand jury minutes is DENIED.

B. Requiring the Presentation of Allegedly Exculpatory Information to the Grand Jury

Following the Court's announcement at the May 5, 2005 conference of its ruling on the motion to inspect, counsel for Kelly requested that, in light of the Government's stated intention to file a superseding indictment,[6] the Government be ordered that when it goes back to the grand jury it must "introduce both Ms. Kelly's statement and the statement which [defense counsel] believe[s] is exculpatory that a co-defendant made which indicates she had no knowledge of participation in the kidnapping." (Tr. 27) As the Court noted at the time, this was in fact a new motion, and Kelly had provided no authority indicating that the Court has the "ability to direct the government what to say or what not to say in the presentation of the evidence to the grand jury." (Tr. 28) The Court provided counsel for Kelly with the opportunity to present such authority, but no such authority has been submitted since the conference. (Tr. 28) Indeed, Kelly's position is

---

[6] The Government indicated that it intended to supersede not to affect the substance of the case, but to change one of the statutory provisions upon which the indictment relied. (Tr. 27) The Government, however, has not yet superseded.

9

contrary to well-established law. "The Supreme Court has . . . held that the Government is not required to present even 'substantial exculpatory' evidence to the grand jury. Rather, because the grand jury only assesses whether there is an adequate basis for bringing a criminal charge, the Government is under no obligation to present any specific evidence." *Brown*, 1995 WL 387698, at *8 (citing *Williams*, 504 U.S. 36) (internal citations omitted); *see also Patterson v. Pool*, No. 02 Civ. 5389, 2004 WL 1874967, at *3 (S.D.N.Y. Aug. 18, 2004) ("Exculpatory evidence need not be presented . . . before the grand jury.").[7] Accordingly, Kelly's request that the Court instruct the Government to present certain evidence to the grand jury if and when it files a superseding indictment is DENIED.

---

[7] Prior to the Supreme Court's decision in *Williams*, the Second Circuit held that "a prosecutor ordinarily need not submit to the grand jury evidence which may negate a defendant's guilt." *Casamento*, 887 F.2d at 1183 (citing *United States v. Ciambrone*, 601 F.2d 616, 622-23 (2d Cir. 1979)). However, "[t]he prosecutor should present exculpatory evidence where such evidence is 'substantial' and 'where it might reasonably be expected to lead the jury not to indict.'" *Casamento*, 887 F.2d at 1183 (quoting *Ciambrone*, 601 F.2d at 623); *see also United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) ("Even so, pursuant to our supervisory power, we may dismiss an indictment for prosecutorial misconduct if the grand jury was misled or misinformed, or possibly if there is 'a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process.'") (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 259 (1988)) (internal citations omitted). *Williams*, however, explicitly rejected such a rule, reversing the Tenth Circuit's decision that a district court may dismiss an otherwise valid indictment because the Government failed to disclose to the grand jury "substantially exculpatory evidence" in its possession. 504 U.S. 36; *see also United States v. Leonard*, 817 F. Supp. 286, 296 (E.D.N.Y. 1992) ("Even if the evidence cited by [defendants] were to be considered substantially exculpatory, the applications would fail in light of *United States v. Williams* . . . . Accordingly, even accepting defendants' characterization of the evidence as substantially exculpatory, the relief sought must be denied."); *Carter*, 2005 WL 180914, at *3 ("Therefore, we join the numerous district courts before us in holding that the rule for prosecutorial misconduct espoused in *Brito* is no longer valid [after *Williams*].").

10

## III. Conclusion

For the reasons outlined above and on the record at the May 5, 2005 conference, the motion to inspect the grand jury minutes is DENIED. Furthermore, the oral application to compel the Government to present certain evidence before the grand jury is DENIED.

SO ORDERED.

Dated: July 5, 2005
New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE